IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 15-00614 SOM |
| | ) | CIVIL NO. 20-00060 SOM-WRP |
| Plaintiff, | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION UNDER 28 U.S.C. § 2255 |
| | ) | TO VACATE, SET ASIDE, OR |
| vs. | ) | CORRECT SENTENCE AND |
| | ) | DECLINING TO ISSUE |
| GREGORY SCHER, | ) | CERTIFICATE OF APPEALABILITY |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE AND
DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

**I.       INTRODUCTION.**

On February 12, 2018, Defendant Gregory Scher entered a plea of guilty to one count of Social Security fraud.  At the plea hearing, Scher stated that no one had done anything to coerce him into pleading guilty and that he was happy with the performance of his attorney.  This court sentenced him to 20 months in prison.  Proceeding *pro se,* Scher now seeks to have his conviction set aside under 28 U.S.C. § 2255.  His primary claims are that his counsel provided ineffective assistance and coerced him into pleading guilty.  His assertions are unsupported by the record.  This court denies Scher's motion and declines to issue a certificate of appealability.

**II.      BACKGROUND.**

On August 6, 2015, the grand jury returned an

indictment charging Scher with four counts of Social Security fraud.  ECF No. 1.  The grand jury later returned two superseding indictments.  The Second Superseding Indictment charged Scher with nine counts of Social Security fraud.  ECF No. 112.  The counts alleged that, for the purpose of obtaining Social Security benefits, Scher had made various misrepresentations covering topics such as Scher's assets, income, ability to work, and family status.  *Id.*

As the case proceeded, Scher went through multiple attorneys.  He was initially represented by the First Assistant Federal Defender, who withdrew on October 30, 2015.  ECF No. 25.  The court then appointed Barry Edwards to represent Scher under the Criminal Justice Act, but Edwards withdrew on January 4, 2017.  The court appointed Brandon K. Flores to replace him.  ECF Nos. 130, 132.  Scher quickly grew dissatisfied with Flores, and he filed a motion to replace him on March 30, 2017.  ECF No. 145.  The court granted the motion and replaced Flores with Lynn Panagakos, Scher's fourth attorney in this case.  ECF Nos. 147-149.  Before sentencing, Panagakos moved to withdraw.  The motion was granted, and the First Assistant Federal Defender returned to represent Scher.  ECF Nos. 209, 215.

During the time Panagakos represented Scher, Panagakos reviewed materials available to her.  She concluded that Scher had credible defenses to Counts 1, 4, 5, 6, and 7 of the Second

Superseding Indictment, but that the Government was likely to prevail on Counts 2, 3, and 8. *See* ECF No. 267-2, PageID # 1887, 1888, 1892. On January 28, 2018, Panagakos sent Scher an email that indicated that, although he might have a defense to some of the counts in the Second Superseding Indictment, the allegations in Counts 2, 3, and 8 were "most troublesome." ECF No. 267-2, PageID # 1892. Panagakos later hired an expert, Ann J. Atkinson, who confirmed her conclusions. In a pair of reports submitted on March 28 and April 22, 2018, Atkinson opined that Scher was innocent of the offenses charged in Counts 1, 4, 5, 6, 7, and 9, but guilty of committing the offenses charged in Counts 2, 3, and 8. ECF No. 250-4, PageID # 1785, *see also* ECF No. 250-3.

According to Panagakos, after she sent her email of January 28, 2018, she had several productive and cooperative discussions with Scher. ECF No. 267-2, PageID # 1888-89. Scher then "instructed her to make a plea offer to the government, which the Government ultimately accepted[.]" *Id.* at 1888. Under the terms of that offer, Scher would plead guilty to only Count 8 (Social Security fraud in violation of 42 U.S.C. § 408(a)(3)). *Id.*

In seeking relief under § 2255, Scher characterizes his interactions with Panagakos differently. According to Scher, Panagakos "refused to have a quiet and calm discussion with [him,]" and instead repeatedly screamed and him and berated him.

3

ECF No. 250, PageID # 1671.  Scher maintains that he agreed to plead guilty "just to get away from Panagakos[.]"  ECF No. 250-1, PageID # 1681.

In any event, Scher pled guilty to Count 8 on February 12, 2018.  At the guilty plea hearing, Scher admitted that a Work Activity Report he submitted to the Social Security Administration was incorrect because it did not state that he had been employed by Kiewit Infrastructure West Company in 2014.  ECF No. 200, PageID # 979, 984.  He said he had also falsely reported being legally blind.  *Id.* at 984-85.  He lied because "he thought if he told the truth, [his] benefits might go away."  *Id.* at 986.

Under oath during his guilty plea hearing, Scher stated that no one had done anything to try to force him to enter a guilty plea, and that he believed he was guilty and was voluntarily saying so.  *Id.* at 968.  This was consistent with the Memorandum of Plea Agreement that he signed.  That document said, "Defendant agrees that this plea is voluntary and not the result of force or threats.  Defendant enters this plea because he in fact guilty . . . ."  ECF No. 192, PageID # 937.

During the guilty plea colloquy, this court asked Scher whether he was satisfied with Ms. Panagakos's representation of him in this case, and, again under oath, he answered, "Yes."  When this court explained to Scher that, in his plea agreement, he was not waiving claims of ineffective assistance of counsel,

4

Scher responded, "I won't be bringing that either." *Id.* at 989. He explained, "She's done a good job. I'm happy." *Id.*

After Panagakos had withdrawn as counsel, the case proceeded to sentencing. Scher is now serving his 20-month prison sentence.

On February 5, 2020, Scher filed the present motion to set aside his conviction. The gist of his motion is that Panagakos was ineffective.

**III.     ANALYSIS.**

A federal prisoner may move to vacate, set aside, or correct his or her sentence if it "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255.

Scher's guilty plea limits the arguments he can raise under § 2255. "'[W]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" *Mahrt v. Beard*, 849 F.3d 1164, 1170 (9th Cir. 2017) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Even after a guilty plea, however, "claims of pre-plea ineffective assistance of counsel

5

are cognizable on federal habeas review when the action, or inaction, of counsel prevents petitioner from making an informed choice whether to plead." *Id.*  Assertions that "counsel rendered pre-plea ineffective assistance by failing to file a motion to suppress" are also permitted.  *Id.* at 1171.  Claims of ineffective assistance of counsel were expressly preserved for Scher in his written plea agreement, which provided: "Defendant also waives his right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such a challenge based on a claim of ineffective assistance of counsel."  ECF No. 192, PageID # 943.

        Scher raises several ineffective assistance of counsel claims.  Although those claims are not well organized, they all fall within one of three broad categories: (1) assertions that Panagakos was ineffective in advising him to plead guilty; (2) claims that Panagakos was ineffective in failing to seek what he calls "suppression" of the indictment (presumably meaning either suppression of evidence or dismissal of the indictment) based on alleged misstatements made in grand jury proceedings; and (3) assertions that Panagakos was ineffective in having failed to investigate claims that a witness had falsely held himself out as an FBI officer.  Scher also appears to be trying to argue that

6

there was prosecutorial misconduct. He asserts that the Assistant United States Attorney included in the indictment charges that the AUSA knew he could not prove.

Scher is entitled to an evidentiary hearing on these claims unless "his allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (quotation marks omitted). An evidentiary hearing is not warranted here. None of Scher's assertions supports relief under § 2255.

> **A. Scher Does Not Show that Panagakos was Ineffective In Advising Him to Plead Guilty (Grounds Two, Three, and Four of Scher's Motion).**

Scher's primary argument appears to be that his guilty plea was involuntary because it flowed from what he alleges was ineffective assistance by Panagakos. To establish ineffective assistance of counsel, Scher must show that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is "a strong presumption" that counsel's conduct was reasonable and that counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688. Even if a petitioner overcomes the presumption of effectiveness, the petitioner must still demonstrate a "reasonable probability that,

7

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction," judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689.

Scher argues that Panagakos gave him bad legal advice and pressured him to plead guilty. He fails to establish this.

### 1. Panagakos's Recommendation that Scher Plead Guilty was Reasonable.

Scher first challenges Panagakos's substantive advice. He appears to argue that Panagakos should not have counseled him to plead guilty because she was in possession of an "exculpatory document that . . . clearly shows that [Scher] acted properly and did not commit the crime for which he pled guilty." ECF No. 250-1, PageID # 1681. Scher is apparently referring to the expert reports that Ann J. Atkinson submitted to Panagakos.[1] Atkinson did opine that Scher was not guilty of the offenses charged in Counts 1, 4, 5, 6, 7, and 9 of the Second Superseding indictment. ECF No. 250-4, PageID # 1785, *see also* ECF No. 250-3. But she also *agreed with the Government's expert that Scher was guilty of the offenses charged in Counts 2, 3, and 8.* ECF No. 250-4,

---

[1] Scher refers to the document at issue as "Exhibit C." ECF No. 250-1, PageID # 1681. He did not submit an Exhibit C. However, the third and final attachment to his motion, which he labeled "Exhibit B," is a copy of Atkinson's report, and that report appears to be the document he describes as Exhibit C.

PageID # 1785.

Panagakos's advice was consistent with Atkinson's conclusions.  Panagakos told Scher that, while he might have a defense against some of the charges he was facing, he was unlikely to prevail on Counts 2, 3, and 8.  ECF No. 267-2, PageID # 1888; 1892.  Atkinson's report did not suggest that Scher was innocent.  To the contrary, it buttressed Panagakos's own determination that Scher was unlikely to prevail at trial on several counts.

        **2.    Scher Has Not Shown that he Pled Guilty Because Panagakos Acted Unprofessionally**.

Scher also asserts that Panagakos was ineffective in treating him unprofessionally.  According to Scher, he "was screamed at, put down, discounted, and browbeaten by [Panagakos] for years."  ECF No. 250-1, PageID # 1681.  Of course, if what Panagakos did was strenuously advise her client, that by itself is not ineffective.  In representing criminal defendants, attorneys have a duty to be honest about their chances of success, and attorneys may need to communicate firmly and even loudly.  Scher claims that Panagakos crossed the line.  But even if Scher and Panagakos differ in their accounts about counsel's demeanor, this court sees no need to resolve such a dispute.  If that were the determinative issue, this court would certainly hold an evidentiary hearing, listening to and observing both individuals before making a credibility finding.  But, without

making any finding on that point, this court concludes that, even if Panagakos "screamed at, put down, discounted, and browbeat[]" Scher, Scher's assertion that he was thereby prejudiced by feeling forced to plead guilty is patently implausible.

To begin, Scher's claims that he pled guilty to get away from Panagakos make no sense. In his petition, he asserts:

> [Panagakos] refused to have a quiet and calm discussion with me during the almost 3-years of her appointment. We did not have even one conversation that did not consist of her screaming at me and berating me. After this case had dragged out for almost 5-years, I was left with no choice but to either-plead guilty just to go to prison and get away from her, or remain having her as my counsel through trial and risk me physically doing her bodily harm as a result of her shrieking and screaming driving me to the breaking point.

ECF No. 250, PageID # 1671. The motion in support of his petition contains similar claims:

> The so-called attorney-client relationship was so broken that Movant was literally forced to either: (A) plead guilty to something, anything, just to get away from Panagakos to be free from the onslaught of non-stop screaming, or (B) Act out against Panagakos in such a manner that would silence the incessant screaming and shrieking. Fortunately for Panagakos, the Movant chose option (A).

ECF No. 250-1, PageID # 1681. Scher's statements are internally inconsistent. He says that he felt forced to give up his right to trial and that he stated under oath that he had committed a crime because otherwise he risked "physically doing [counsel]

10

bodily harm."  Feeling driven to hurt Panagakos is inconsistent with feeling coerced into pleading guilty.

Two other points are critical to this court's conclusion that Scher's description is so implausible as not to warrant an evidentiary hearing.  The first and most important point is that Scher's reference to Panagakos's alleged berating of him is at total odds with his sworn statements during the guilty plea colloquy.  During the guilty plea hearing, Scher affirmatively stated that no one had "done anything to try to force [him] to enter a guilty plea."  ECF No. 200, PageID # 968.  He also indicated that he was not planning to assert ineffective assistance of counsel and that Panagakos had done a good job.  He said he was "happy" with her work.  *Id.* at 989.  These statements are entitled to considerable weight.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").  Given his sworn statements, this court cannot credit Scher's present assertions that he pled guilty to "get away from Panagakos."  Nor can the court credit his claim that his guilty plea was involuntary.

The second point that is clear from the existing record is that Scher has never been shy about ridding himself of an

11

attorney and starting anew with another attorney.  In this very case, he ran through four attorneys before returning to the first attorney he had had.  Scher knew very well that he was not stuck with an attorney with whom the relationship had broken down, and, in fact, he ultimately got a replacement for Panagakos.  Panagakos was appointed because the court had granted Scher's motion to replace his previous attorney, Brandon K. Flores, who had also been appointed under the Criminal Justice Act.  *See* ECF Nos. 145, 148.  Before Flores, Scher had been represented in this case by Edwards, and before that by the First Assistant Federal Defender.  Scher had more than passing experience with switching attorneys.  If Panagakos's behavior had been as extreme as Scher now alleges, he would surely have once again quickly sought new counsel, instead of waiting, as he puts it, for years, allegedly suffering all the while.  What Scher alleges in his § 2255 motion is completely at odds with the record in this case and therefore does not support relief under § 2255.

> **B. Scher Does Not Show that Panagakos Was Ineffective in Failing to Move To Suppress or Dismiss (Grounds One, Five, Six, and Seven of Scher's Motion).**

Construed liberally, Scher's second claim appears to be that Panagakos was ineffective because she failed to conduct an investigation that would have led her to move to suppress evidence or to dismiss the indictment.  According to Scher, the grand jury proceedings were defective because a witness, Robert

Rodriguez, told several lies during his testimony.  *See* ECF No. 250, PageID # 1668, 1673; ECF No. 250-1, PageID # 1679-1681. Scher seems to suggest that, if Panagakos had interviewed Cal Gomez, she would have learned about these lies and brought an appropriate motion.  Scher's argument fails at the first hurdle: he cannot show that Rodriguez actually lied during his testimony.

A motion to dismiss a grand jury indictment can only be sustained if the prosecutor knowingly permitted perjured testimony.  *United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000) ("While we find it hard to understand why a prosecutor would not resolve this discrepancy in some way prior to trial, there is no evidence that the prosecutor knew that Inspector Morris committed perjury in his testimony to the grand jury, as opposed to making a misstatement, material as though that misstatement appears to be.").  There is no evidence of such conduct here.  Scher has not even shown that Rodriguez made any statements that were incorrect.

Scher appears to contend that Rodriguez made false representations about Scher's involvement with work on the Honolulu rail project.  ECF No. 250-1, PageID # 1680.  The parties agree on several basic facts.  There is no dispute that, while Scher worked for a construction company called CB&I in 2012, he was photographed sleeping in a crane.  *See id.* at 1680. There is no dispute that CB&I did not work on the rail project.

*Id.*  Similarly undisputed is that a different construction company, Kiewit, *did* work on the rail project.  *See id*.  Scher does not deny that he worked for Kiewit in 2014.

Scher appears to be arguing that Rodriguez falsely suggested that the picture of Scher asleep in the crane was taken while Scher was working on the rail project.  *Id.*  Scher maintains that, because of long-running public controversy surrounding the rail project, the belief that he was "sleeping on the clock" could have created bias against him.  *Id.* at 1681.

The grand jury transcript shows that Scher is mistaken. Rodriguez told the grand jury that the photo of Scher sleeping in the crane was taken in 2012, while he worked with CB&I:

> So if you note, from approximately -- so when he filed his application in October of 2012, he told us I'm disabled as of July 15th, 2012, and I'm unable to work.  So if you notice, about July 15th, 2012, he's actually employed at that time by Chicago Bridge & Iron, that's going to be the fourth bar down, and that was from July 2nd of 2012 to August 9th of 2012.  In fact, when he makes that statement, that week he gets paid by Chicago Bridge & Iron, and the prior week he was actually given a safety violation at CB&I for sleeping in his cab of the crane and so there's a picture in the subpoena returns of him sleeping in the cab of a crane four days before he claims that he was entirely disabled and could not work.

ECF No. 250-2, PageID # 1718.  Rodriguez did discuss Scher's work on the rail project, but he indicated that he performed that work for Kiewit, not CB&I:

14

> If I scroll down here, if you see that purple
> line and go down and see Kiewit, he was
> planning -- he had accepted the job for
> Kiewit, and they were asking the Court to
> allow him to serve something other than jail
> time because it would be detrimental to his
> work there and that would -- he was one of
> the few crane operators certified for this
> specific job and that it was for the rail
> line that all of us, you know, will
> eventually love and -- and ride smoothly,
> right, but that it would be so detrimental
> that it would -- it would actually affect the
> community of Honolulu because this rail line
> would be so much further behind than it
> already is.

*Id.* at 1722.  Nothing in the grand jury transcript substantiates Scher's claims that Rodriguez falsely told the grand jury that Scher was "sleeping on the clock while on the rail project[.]" *See* ECF No. 250-1, PageID 1681.  Scher has therefore failed to show that Panagakos could, or should, have moved to dismiss the grand jury indictment based on testimony by Rodriguez.

Scher's moving papers refer to Panagakos's failure to file a motion to "suppress" the indictment.  To the extent Scher is referring to a motion to suppress evidence, his argument similarly fails.  Scher does not establish that Rodriguez unconstitutionally obtained evidence or presented such evidence to the grand jury.

### C. Panagakos's Refusal to Interview Cal Gomez was not Ineffective (Grounds One and Seven of Scher's Motion).

Scher's third claim is that Panagakos's refusal to speak to Cal Gomez was ineffective because Gomez would have

15

revealed that Rodriguez had falsely held himself out as an FBI agent while interviewing Gomez.  ECF No. 250-1, PageID 1679; ECF No. 273, PageID # 1932.  This court does not need to address whether Panagakos's failure to speak to Gomez was objectively unreasonable because Scher has not shown that he was prejudiced.

In his reply brief,[2] Scher seems to argue that, if Panagakos had discovered Rodriguez's alleged deception, she could have filed a motion to suppress because "any information he [acquired] becomes [the] fruit of the poisonous tree."  ECF No. 273, PageID # 1932.  That assertion lacks merit.  Scher does not identify any constitutional or statutory violation that implicates the fruit of the poisonous tree doctrine.  Nor does he show that he has standing to challenge any such violation.  *See generally United States v. Salvucci*, 448 U.S. 83, 85 (1980) ("defendants charged with crimes of possession may only claim the benefits of the exclusionary rule if their own Fourth Amendment rights have in fact been violated").  Scher does not show that interviewing Gomez would have led to the suppression of evidence.

Nor does Scher show that he suffered any other form of prejudice.  To establish prejudice, Scher must show a "reasonable probability that . . . the result of the proceeding would have

---

[2] This argument also fails because Scher raised it for the first time in a reply brief.  *See* Local Rule 12.2(e) ("Any argument raised for the first time in the reply may be disregarded.").

16

been different" if Panagakos had spoken to Gomez. *Strickland*, 466 U.S. at 694. He therefore must demonstrate that her refusal affected his decision to plead guilty. *See generally Mahrt*, 849 F.3d at 1170.

Scher does not make that showing. Scher never suggests that his decision to plead guilty was affected by Panagakos's decision not to talk with Gomez. At most, he claims that he pled guilty to "get away from Panagakos." ECF No. 250, PageID # 1671. Indeed, it would have been unreasonable for Scher to let this issue affect his plea decision. The evidence against him was overwhelming, and impeaching Rodriguez by showing that he had misrepresented himself as an FBI agent would not have changed that. Scher does not show that the outcome of this case would have been different if Panagakos had spoken to Cal Gomez and had learned that Rodriguez had held himself out as an FBI agent.

> **D. Scher is not Entitled to Relief Based on Prosecutorial Misconduct (Ground Five of Scher's Motion).**

Finally, in his reply brief, Scher raises what appears to be an allegation that the Assistant United States Attorney acted wrongfully in charging Scher with crimes he knew he could not prove. Scher states that, at the end of his sentencing hearing, the AUSA, after moving to dismiss all counts except for the one count to which Scher had pled guilty, remarked that the

Government "couldn't have proved them anyway."  ECF No. 273, PageID # 1931.  This argument fails for numerous reasons.

First, this judge was present at the sentencing hearing and heard no such statement.

Second, in his plea agreement, Scher waived all claims under § 2255 other than those based on ineffective assistance of counsel.  ECF No. 192, PageID # 943.  This particular matter is not a claim of ineffective assistance of counsel.  In fact, by the time of the alleged statement, Panagakos was not Scher's attorney, and there is no suggestion by Scher that she somehow should have known of the matter before she stopped representing Scher.

Third, Scher raises the matter belatedly in his reply.  As noted earlier in this order, arguments raised for the first time in a reply may be disregarded under Local Rule 12.2(e).  The way in which Scher raises the matter is particularly disturbing.  Scher says that it would be unjust to deny him access to a sentencing transcript, suggesting that people are conspiring to hide evidence of wrongdoing.  In fact, it does not appear that Scher had previously requested access to that transcript, so no one was "denying" him access.  As it happens, Scher has access to the transcript.  The transcript of the end of the sentencing hearing, which is when Scher says the AUSA's alleged statement was made, is attached to the Government's memorandum opposing his

request for compassionate release.  ECF No. 284-4.  The transcript includes nothing suggesting that the AUSA made the alleged statement.

### IV.     THE COURT DECLINES TO ISSUE A CERTIFICATE OF APPEALABILITY.

The court declines to grant Scher a certificate of appealability.  An appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B).  The court shall issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court denies a § 2255 petition on the merits, a petitioner, to satisfy the requirements of § 2253(c)(2), "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Reasonable jurists would not find this court's assessment of the merits of Scher's constitutional claims debatable or wrong.

### V.      CONCLUSION.

Scher's motion to vacate his sentence under 28 U.S.C. § 2255 is denied, and the court declines to issue a certificate of appealability.  The Clerk of Court is directed to enter judgment for the Government in Civil No. 20-00060 and to close

that case.

It is so ordered.

DATED: Honolulu, Hawaii, July 22, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Scher*, Cr. No. 15-00614 SOM; ORDER DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY